# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM J. GRADFORD, | 1:18-cv-01364-DAD-GSA-PC |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE PROCEED AGAINST DEFENDANT GUILTRON FOR RETALIATION, AND THAT ALL OTHER CLAIMS BE DISMISSED FOR PLAINTIFF'S FAILURE TO STATE A CLAIM (ECF No. 19.)** |
| v. | |
| DEPUTY GUILTRON, | |
| Defendant. | |
| | **FOURTEEN-DAY DEADLINE TO FILE OBJECTIONS, IF ANY** |

## I. BACKGROUND

William J. Gradford ("Plaintiff") is a prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. On October 1, 2018, Plaintiff filed the Complaint commencing this action at the Sacramento Division of the United States District Court for the Eastern District of California. (ECF No. 1.) On October 4, 2018, the case was transferred to the Fresno Division. (ECF No. 5.)

On October 9, 2018, the court issued an order relating this case to Plaintiff's other pending cases under Local Rule 123, and then reassigning the case to the dockets of District Judge Dale A. Drozd and Magistrate Judge Gary S. Austin. (ECF No. 8.)

On August 30, 2019, the court screened the Complaint and dismissed it for failure to state a claim, with leave to amend. (ECF No. 18.) On September 30, 2019, Plaintiff filed the First

Amended Complaint, which is now before the court for screening. 28 U.S.C. § 1915A. (ECF No. 19.)

## II. SCREENING REQUIREMENT

The *in forma pauperis* statute provides that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678; Moss v. U.S. Secret Service, 572 F.3d 962, 969

(9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

**III. SUMMARY OF FIRST AMENDED COMPLAINT**

The events at issue in the First Amended Complaint allegedly occurred at the Stanislaus County Public Safety Center in Modesto, California, when Plaintiff was detained there as a pretrial detainee in the custody of the Stanislaus County Sheriff. Plaintiff names Sheriff's Deputy Guiltron as the sole defendant.

Plaintiff's allegations follow:

Deputy Guiltron has retaliated against Plaintiff many times to prevent Plaintiff from filing grievances against Guiltron and other deputies assigned to Plaintiff's housing unit. This has been an ongoing problem in Plaintiff's housing unit. Plaintiff made many attempts in vain complaining to higher-ranking deputies at the jail.

On March 2, 2017, defendant Guiltron purposely opened Plaintiff's incoming legal mail, as he had done before, after being told weeks before via email by Sergeant (Sgt.) Johnson [not a defendant] and Lieutenant (Lt.) Kirt [not a defendant] not to do so. Plaintiff was told this by both the Sergeant and Lieutenant in person weeks prior. However, instances of retaliation and legal mail opening continued against Plaintiff. Plaintiff was also told by Lt. Kirt in person that his deputies were not to open Plaintiff's incoming legal mail out of Plaintiff's presence, without Plaintiff's permission. Lt. Kirt told Plaintiff that he would stop the retaliation, but it continued. Lt. Kirt attempted to bribe Plaintiff to stop filing grievances against his deputies by saying he would do anything for Plaintiff. "Just stop grievancing," he said. (ECF No. 19 at 5.) Lt. Kirt said even if Plaintiff's incoming legal mail was questionable, his deputies were not to open any inmate's legal mail, "especially Gradford's," but it continued. (Id.)

After Plaintiff filed a grievance against defendant Guiltron again for constantly opening Plaintiff's legal mail out of Plaintiff's presence and without permission, defendant Guiltron came to Plaintiff's cell and at approximately 5-6 a.m., opened Plaintiff's single man cell door, waking him up, and said, "Here is your grievance." (Id. at 6.) Defendant Guiltron purposely handed Plaintiff the full three-page grievance; The first page (green) was for jail records; the second

page (yellow) was Defendant Guiltron's copy; and the third page (pink) was Plaintiff's inmate copy. Plaintiff immediately said, "Excuse me, sir, you're supposed to keep a copy for yourself and file the green copy for the jail's records." (ECF No. 19 at 6.) He replied really fast, quickly and angrily, "I know," and before Plaintiff could give him the green and yellow copies he closed Plaintiff's cell door without the copies and quickly walked away from the cell door. (Id.) Plaintiff immediately filed a grievance against defendant Guiltron for this incident straight to Sgt. Johnson [not a defendant] explaining what defendant Guiltron had just done with the grievance attempting to cover up his retaliation, keeping the grievance out of the official records, and preventing higher ranking officials from finding out.

During the eight months Plaintiff was incarcerated at the Stanislaus Public Safety Center, Plaintiff was badly mistreated and abused. Defendant Guiltron retaliated against him because on December 5, 2016, Plaintiff reported two well-known correctional officers, in-house deputies Tiexiera [not defendant] and McCarthy [not a defendant] for throwing inmate Ibanez against the wall while Ibanez was on the floor having a seizure, unresponsive. Approximately five minutes later, Tiexiera moved Plaintiff to McCarthy's assigned position, the court's tunnel, because Plaintiff told him he was going to report him. That's when Deputy McCarthy told Plaintiff, "Gradford, if you know what's good for you, you would keep your mouth shut!" (Id. at 7.)

Plaintiff will always fear retaliation by Stanislaus County Sheriff's Deputies, third parties, and others, including family members, because his brother Alonzo J. Gradford has been an attorney in Stanislaus County for many years and has personal relationships with many named defendants related to this case in the United States District Court for the Eastern District of California. Upon his release from prison, Plaintiff will always be afraid of retaliation by Stanislaus in-house Sheriff's deputies who have a very bad reputation for violence towards inmates, mostly for unjust and unwarranted reasons, e.g., down-inmate Ibanez.

Defendant Guiltron and others have always caused Plaintiff problems. Every time defendant Guiltron processed Plaintiff's outgoing legal mail, Plaintiff would very respectfully, as always, ask him to sign the seal as required. He would always refuse and say he would sign them up front at mail drop-off outside the unit and outside of Plaintiff's presence. Plaintiff would

never reply back because when he first asked defendant Guiltron to do so, he would get upset and angry with Plaintiff for asking and always give Plaintiff intimidating responses with traces of violent behaviors. Because of this, Plaintiff began to fear him and stopped asking him to do so thinking he might actually start physically harming Plaintiff; Plaintiff's' brother Alonzo is very well connected and well known by many Stanislaus County officials and deputies. Upon his release from prison on November 12, 2018, Plaintiff experienced under-cover retaliation by third parties and others for several months, which still continues.

Plaintiff requests a declaratory judgment, monetary damages, and costs of suit.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting

Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A. **Rights of Pretrial Detainees**

Plaintiff was a pretrial detainee at the time of the events at issue. "[P]retrial detainees . . . possess greater constitutional rights than prisoners." Stone v. City of San Francisco, 968 F.2d 850, 857 n.10 (9th Cir. 1992); see also Gary H. v. Hegstrom, 831 F.2d 1430, 1432 (9th Cir. 1987). "If a plaintiff "had not been convicted of a crime, but had only been arrested, [then] his rights derive from the due process clause rather than the Eighth Amendment's protection against cruel and unusual punishment." Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002); see also Bell v. Wolfish, 441 U.S. 520, 537 n.16 (1979) (noting that "the Due Process Clause rather than the Eighth Amendment" is relied upon in considering claims of pretrial detainees because "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions").

Unless there is evidence of intent to punish, then those conditions or restrictions that are reasonably related to legitimate penological objectives do not violate pretrial detainees' rights to be free from punishment. See Block v. Rutherford, 468 U.S. 576, 584 (1984) (citing Bell, 441 U.S. at 538-39); Pierce v. County of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008); Demery v. Arpaio, 378 F.3d 1020, 1028-29 (9th Cir. 2004) (holding that streaming live images of pretrial detainees to internet users around the world through the use of world-wide web cameras was not reasonably related to a non-punitive purpose, and thus, violated the Fourteenth Amendment); Simmons v. Sacramento Cnty. Super. Ct., 318 F.3d 1156, 1160-61 (9th Cir. 2003); Valdez v. Rosenbaum, 302 F.3d 1039, 1045 (9th Cir. 2002); White v. Roper, 901 F.2d 1501, 1504 (9th Cir. 1990); see also Florence v. Board of Chosen Freeholders of Cnty. of Burlington, 132 S. Ct. 1510,

///

1515-16 (2012). Order and security are legitimate penological interests. See White, 901 F.2d at 1504.

### B. Mail Protections

Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). Nevertheless, correctional institutions and jails have a legitimate governmental interest in imposing certain restraints on inmate or detainee correspondence to maintain order and security. See Procunier v. Martinez, 416 U.S. 396, 413 (1974), overturned on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 413–14 (1989). For example, inmates and detainees may have their mail screened to ensure that there is no contraband inside. Mangiaracina v. Penzone, 849 F.3d 1191, 1195 (9th Cir. 2017). The mere fact that prison officials open and conduct a visual inspection of a prisoner's mail does not state a claim for violation of a prisoner's constitutional rights. Wolff v. McDonnell, 418 U.S. 539, 576–77 (1974); Nordstrom v. Ryan, 762 F.3d 903, 908-909 (9th Cir. 2014) ("Nordstrom I"); Mitchell v. Dupnick, 75 F.3d 517, 523 (9th Cir. 1996).

Prison officials may examine an inmate's mail without infringing his rights and inspect non-legal mail for contraband outside the inmate's presence. United States v. Wilson, 447 F.2d 1, 8 n. 4 (9th Cir. 1971); Witherow, 52 F.3d at 265–66 (upholding inspection of outgoing mail). In the Ninth Circuit, "mail from the courts, as contrasted with mail from a prisoner's lawyer, is not legal mail." Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996). "All correspondence from a court to a litigant is a public document, which prison personnel could if they want inspect in the court's files." Id. at 1094 (citing to Martin v. Brewer, 830 F.2d 76, 78 (7th Cir. 1987) ).

Under federal law, "legal mail" entitled to First Amendment protection is narrowly defined as confidential correspondence between a prisoner and his attorney. See Nordstrom I, 762 F.3d at 909. The Ninth Circuit "recognize[s] that prisoners have a protected First Amendment interest in having properly marked legal mail [including civil mail] opened only in their presence." Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1211 (9th Cir. 2017). However, an isolated instance or occasional opening of legal mail outside the inmate's presence does not rise

///

to the level of a constitutional violation. See Stevenson v. Koskey, 877 F.2d 1435, 1441 (9th Cir. 1989).

In criminal cases, such correspondence is also protected by the Sixth Amendment. See Mangiaracina, 849 F.3d at 1196 (and cases cited therein). "[P]rison officials may open, but not read, incoming legal mail in the presence of the inmate." Nordstrom v. Ryan, 856 F.3d 1265, 1272 9th Cir. 2017) ("Nordstrom II") (citing Wolff, 418 U.S. at 577. "[T]he practice of requiring an inmate to be present when his legal mail is opened is a measure designed to prevent officials from reading the mail in the first place." Nordstrom I, 762 F.3d at 910 (citing Wolff at 577); Mangiaracina, 849 F.3d at 1196 (Sixth Amendment requires a pretrial detainee be present when legal mail related to a criminal matter is inspected; even a single incident of improper reading of a pretrial detainee's mail may give rise to a constitutional violation).

In this case, Plaintiff alleges that defendant Guiltron opened Plaintiff's incoming legal mail out of his presence and without his permission and refused Plaintiff's request to "sign the seal" on Plaintiff's outgoing legal mail in Plaintiff's presence. (ECF No. 19 at 5.) These allegations fail to state a constitutional violation. Here, Plaintiff has not alleged that defendant Guiltron improperly read his legal mail, or prevented him from sending legal mail. Moreover, Plaintiff has not alleged that the correspondence was properly marked mail to his attorney or prospective attorney.[1] Plaintiff's allegations that defendant Guiltron refused his request to "sign the seal" on Plaintiff's legal mail in Plaintiff's presence, without more, also fails to state a constitutional violation. In addition, the fact that defendant Guiltron disobeyed instructions from Lt. Kirt and Sergeant Johnson, without more, also fails to state a constitutional violation.

Thus, Plaintiff fails to state a claim against defendant Guiltron for interference with his mail under the First and Sixth Amendments.

///

---

[1] In Plaintiff's grievance appeal dated March 8, 2017, Plaintiff states that the mail opened by Deputy Guiltron on March 2, 2017, was labeled "Official Business" from the Clerk of the U.S. District Court, Eastern District of California, and Deputy Guiltron stated that he did not see "legal mail" on the front of the envelope. (Compl, ECF No. 1 at 10, Exh. A.) Mail from the courts is not legal mail.

///

**C.    Retaliation**

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. Rizzo v. Dawson, 778 F.2d 5527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).

As discussed by the Ninth Circuit in Watison v. Carter:

> "A retaliation claim has five elements. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). First, the plaintiff must allege that the retaliated-against conduct is protected. The filing of an inmate grievance is protected conduct. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).
>
> Second, the plaintiff must claim the defendant took adverse action against the plaintiff. Id. at 567. The adverse action need not be an independent constitutional violation. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere *threat* of harm can be an adverse action...." Brodheim, 584 F.3d at 1270.
>
> Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. See Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent"); Murphy v. Lane, 833 F.2d 106, 108–09 (7th Cir. 1987).
>
> Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Robinson, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," Brodheim, 584 F.3d at 1269, that is "more than minimal," Robinson, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. Id. at 569.
>
> Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution...." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.1985). A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, id., or that they were "unnecessary to the maintenance of order in the institution," Franklin v. Murphy, 745 F.2d 1221, 1230 (9th Cir.1984)."

Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012). The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (9th Cir. 1995) (quoting

Sandin v. Conner, 515 U.S. 472, 482 (1995)). The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

Plaintiff alleges that he submitted a grievance against defendant Guiltron and Guiltron returned the grievance to Plaintiff without filing it on the official record. Plaintiff alleges that defendant Guiltron gave him all three copies of the grievance – green copy for jail records; yellow copy for Defendant Guiltron to keep; and pink copy for Plaintiff to keep. Plaintiff told Guiltron he was not supposed to give all three copies to Plaintiff, and Guiltron said, "I know" and walked away. (ECF No. 19 at 6.)

Plaintiff has sufficiently alleged that he was participated in protected conduct when he filed a grievance against defendant Guiltron. Therefore, Plaintiff satisfies the first element of a retaliation claim.

Plaintiff has also satisfied the second element -- that defendant Guiltron took an adverse action against Plaintiff – eg., that Guiltron knowingly prevented Plaintiff's grievance from being filed on the official record. This constitutes an adverse action.

Plaintiff has also alleged facts supporting an inference that defendant Guiltron returned all three copies of the grievance *because* Plaintiff had submitted the grievance against defendant Guiltron. Thus, Plaintiff has alleged facts "show[ing] that his protected conduct was the 'substantial' or 'motivating' factor behind the defendant's conduct." Brodheim, 584 F.3d at 1271 (internal quotation marks and citation omitted). Plaintiff has shown the requisite connection between his submission of the grievance, and defendant Guiltron's failure to file the grievance on the record. Therefore, Plaintiff satisfies the third element of a retaliation claim.

As well, Plaintiff satisfies the fourth element because he was harmed by defendant Guiltron's failure to file the grievance. Likewise, Plaintiff satisfies the fifth element because he characterizes defendant Guiltron's behavior as attempting to cover up Guiltron's retaliation, keeping the grievance out of the official records and preventing higher ranking officials from finding out, none of which constitute valid penological purposes.

Accordingly, the court finds that Plaintiff states a cognizable claim in the First Amended Complaint against defendant Guiltron for retaliation.

### D. **Relief Requested**

Besides monetary damages, Plaintiff requests declaratory relief and costs of suit. Plaintiff's request for declaratory relief should be denied because it is subsumed by Plaintiff's damages claim. See Rhodes, 408 F.3d at 565-66 n.8 (because claim for damages entails determination of whether officers' alleged conduct violated plaintiff's rights, the separate request for declaratory relief is subsumed by damages action); see also Fitzpatrick v. Gates, No. CV 00-4191-GAF (AJWx), 2001 WL 630534, at *5 (C.D. Cal. Apr. 18, 2001) ("Where a plaintiff seeks damages or relief for an alleged constitutional injury that has already occurred declaratory relief generally is inappropriate[.]")

## V. **CONCLUSION AND RECOMMENDATIONS**

For the reasons set forth above, the court finds that Plaintiff states a cognizable claim in the First Amended Complaint against defendant Guiltron for retaliation. However, the court finds no other cognizable claims upon which relief may be granted under § 1983. Therefore, the court shall recommend that this case proceed only against defendant Guiltron for retaliation, and all other claims should be dismissed for failure to state a claim.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." Here, the court previously granted Plaintiff leave to amend the complaint, with ample guidance by the court, and Plaintiff has only stated one claim upon which relief may be granted under § 1983. The court is persuaded that Plaintiff is unable to allege any facts, based upon the circumstances he challenges, that would state additional cognizable claims. "A district court may deny leave to amend when amendment would be futile." Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013). The court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1. This case proceed only against defendant Guiltron for retaliation against Plaintiff in violation of the First Amendment, for monetary damages only; and
2. All remaining claims be DISMISSED, with prejudice, for failure to state a claim under § 1983.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after the date of service of these findings and recommendations, Plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **February 11, 2020**        **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE